**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **RAFAL RUDNICKI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **No. 04 C 5719** |
| | ) | |
| **WPNA 1490 AM, ALLIANCE COMMUNICATIONS,** | ) | **Judge Rebecca R. Pallmeyer** |
| **INC., and POLISH NATIONAL ALLIANCE OF** | ) | |
| **THE UNITED STATES OF NORTHER AMERICA,** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

### MEMORANDUM OPINION AND ORDER

Plaintiff Rafal Rudnicki, a Polish radio news correspondent, accuses Defendants, a Chicago-area radio station and its owners, of committing copyright infringement by broadcasting Plaintiff's radio reports without his permission. Before the court are the parties' motions for summary judgment. Defendants move for summary judgment on all claims because, they contend, Plaintiff cannot establish a copyrightable interest in the reports or any measure of damages. Plaintiff moves for partial summary judgment on the issue of whether six specific recordings of Rudnicki's work—only a portion of the several broadcasts at issue in this case—were properly registered pursuant to the United States Copyright Act. 17 U.S.C. §101, *et seq.* The court also addresses Defendant's motion to strike certain affidavits.

### BACKGROUND

Plaintiff Rudnicki is a Polish national residing in Brussels, Belgium. (Rudnicki Dep. 10/16/06, 11:4-10). At all relevant times, Rudnicki was a radio news correspondent covering European Union issues for RadioZET, a major Polish broadcast network. (Rudnicki Aff. ¶ 1, Ex. J to Pl.'s 56.1 Resp.; Def. 56.1 Resp. ¶ 7.) The parties dispute whether Rudnicki should be characterized as an employee of RadioZET, but they agree that Rudnicki and RadioZET entered into a "Cooperation Agreement" in 2003 that obligated Rudnicki to provide no less than 40 pieces

of journalistic correspondence to RadioZET each month in exchange for reimbursement of healthcare and business expenses and remuneration in the amount of 120 Polish zlotych (the plural form of zloty) per piece of correspondence. (Def.'s 56 Stat. ¶ 12-14; Pl's 56.1 Resp. ¶ 12-14.)[1]  In addition to his work on behalf of RadioZET, Plaintiff also collaborated with and provided news reports to WNVR, a Chicago-area radio station, apparently with RadioZET's knowledge and consent. (Rudnicki Dep. 03/13/09, 142-44.)  At least one of the reports Defendants allegedly infringed was prepared for WNVR by Rudnicki. (Def.'s 56 Stat. ¶ 34; Pl's 56.1 Resp. ¶ 34.)

Defendant WPNA 1490 AM ("WPNA") is a radio station based in Oak Park, Illinois that purports to serve a diverse audience of ethnic communities, including the large Chicago-area Polish community.[2] (Def.'s 56 Stat. ¶ 3-4.)  WPNA is operated by Defendant Alliance Communications, Inc. ("Alliance"), a corporation which is organized under Illinois law and maintains its principal place of business in Illinois.  (Def. 56 Stat. ¶ 3.)  Both WPNA and Alliance are owned by Defendant Polish National Alliance ("PNA"), a fraternal insurance benefit association with its principal place of business in Illinois. (Def. 56 Stat.  ¶ 2-4.)

In his initial complaint, Plaintiff alleged that, on 26 different occasions in 2004, WPNA broadcast audio recordings of Rudnicki's news reports during the station's morning show, which

---

[1]    A copy of the Cooperation Agreement, drafted in Polish, is in the record.  The parties present the court with conflicting English translations, for which they offer contradictory interpretations.  (Ex. B Def 56 Stat.; Ex. H to Pl.'s 56.1 Resp.)  The main area of dispute is the translation of § 5 of the agreement, titled "License," which describes the rights possessed by RadioZET and by Rudnicki in the news report recordings.  Plaintiff's translation of this provision refers to RadioZET's ownership of "economic rights" in the recordings.  Defendant's version translates the same provision as transferring primary "copyrights" to RadioZET.  The parties agree that the Agreement does not contain an explicit territorial limitation on the designation of rights between the parties, but they differ on the significance of this lack of specificity.  (Def.'s 56 Stat. ¶ 16; Pl.'s 56.1 Resp. ¶ 16)

[2]    With over one million residents claiming Polish ancestry, Chicago is often said to have a larger Polish population than any city other than Warsaw, Poland.  The Polish language is spoken in neighborhoods throughout the city.  *See America the Diverse*, USA TODAY WEEKEND MAGAZINE (May 15, 2005).

is broadcast from approximately 7:00 a.m. until 9:00 a.m. (Def.'s 56 Stat. ¶ 9; Pl's 56.I Resp. ¶ 9.) In support of his 2004 claims, Rudnicki submitted an affidavit stating that he listened to recordings of WPNA broadcasts provided to him by his attorney and identified 26 instances in which the recordings included his reports. (Rudnicki Aff. ¶ 4-11, Ex. J to Pl.'s 56.1 Resp.) Each of the reports had been first broadcast on RadioZET in Poland and made available on RadioZET's website. (*Id.* at ¶ ¶ 4, 8, 12.) According to Rudnicki, the reports played on WPNA were in Rudnicki's voice and reproduced verbatim, except for the elision of Rudnicki's sign-on and sign-off at the beginning and end of each report. (*Id.*) Rudnicki claims that he never gave anyone at WPNA permission to use or reproduce his reports. (*Id.* at ¶ 11.)

Plaintiff later amended his complaint to add 27 occasions in 2006 when, he alleges, WPNA again aired news reports by Rudnicki, again without his permission, this time on an afternoon news program hosted by Slawomiz Budzik. (Def.'s 56 Stat. ¶ 10; Pl's 56.1 Resp. ¶ 10.) In a deposition, Budzik testified that, though he did not recall specifically broadcasting Rudnicki's work on his show, Budzik did occasionally use material from RadioZET's website on the air because he believed this material was not copyrighted. (Budzik Dep. 28:6-15.)

In early September 2006, Rudnicki sought U.S. copyright protection for six of his reports. (Def. 56 Stat. ¶ 31; Pl's 56.1 Resp. ¶ 31.) The United States Copyright Office issued Rudnicki a Certificate of Registration on September 5, 2006. (Ex. 4, Pl's 56.1 Stat.) The certificate describes the copyrighted work as "News Reports and Analysis of Rafal Rudnicki" and lists Rafal Rudnicki as the author, performer, and copyright claimant of the work. (*Id.*) Attached to the certificate is a compact disc, which contains the Polish-language recordings of six news reports. (*Id.*) The certificate itself does not specify exactly which "news reports and analysis" it refers to nor does it identify the date the news reports were first recorded or broadcast. (*Id.*) There is no dispute between the parties, however, as to which of Rudnicki's reports were recorded on the disc that he deposited with the Copyright Office; the deposited reports concern events in the late summer of

3

2006, including (1) a story outlining the Polish Prime Minister's visit to Brussels, (2) a story on the commitment of European troops to Lebanon, (3) a story on state aid to Polish shipyards, (4) a story on meetings between the European Commission President and the Polish Prime Minister, (5) a story on the Polish Prime Minster's schedule while in Brussels, and (6) a story on security at European airports. (Ex. J, to Def's 56 Stat.; Ex. B to Ex. I to Def's 56 Stat.; Pl's 56.1 Stat. ¶ 10.) Rudnicki prepared and recorded the reports himself before sending them to RadioZET and WNVR. In five of the six deposited reports, Rudnicki refers to himself as a correspondent for RadioZET. (Ex. B to Ex. I to Def's 56 Stat.) In the remaining one, he refers to himself as a correspondent for a WNVR news show. (*Id.*) All of the reports pertain to information that was of public interest and import in Poland at the time of the initial broadcasts. (Def. 56.1 ¶ 32; Pl's 56.1 Resp. ¶ 8.) Rudnicki did not remember the exact date that each deposited report was composed and broadcast, but he believed they were all broadcast (either by RadioZET in Poland or by WNVR in Chicago) some time in August 2006. (Rudnicki Dep. 03/13/09, 25:10-14, 32:2-8.)

Complete copies of the allegedly infringing WPNA broadcasts, which were stored by the radio station on digital audio tapes (DAT), are not in the record. While it appears that both parties had unimpeded access to the relevant WPNA broadcast recordings at some point, the recordings are currently inaccessible. According to Alan Kearns, the technician that Defendants placed in charge of preserving the broadcast recordings, the only machine capable of playing the master DAT recordings ceased working during the course of this litigation. (Kearns Dep. 06/10/09, 9:13-23.) Kearns explained that the machine's loading mechanism malfunctioned and its electrical system was severely damaged by power glitches at WPNA's Oak Park facility. (*Id.* at 29-31.) There is no indication that either party has made any effort to obtain access to another machine capable of playing the master tapes or to produce full and complete copies of the master tapes in some other format.

In lieu of the original WPNA broadcast recordings, the parties present contradictory

affidavits of persons claiming to have first-hand knowledge of the DAT recordings. Defendants present the affidavit of Emily Lecszczynski, a PNA employee responsible for overseeing operations at WPNA. (Lecszczynski Aff.¶ 1, Ex. L to Def. 56 Stat.) Lecszczynski stated that she reviewed the DAT recordings and determined that none of the reports Rudnicki deposited with the Copyright Office "aired on WPNA 1490 on the times stated" in Plaintiff's amended complaint. (*Id.* ¶ 11.) Lecszczynski also reviewed 14 WPNA broadcasts copied from the DAT recordings by Plaintiff's attorneys prior to the machine malfunction. From that review, Lecszczynski reported, she determined that none of the WPNA broadcasts "matched" Rudnicki's deposited reports. (*Id.* at ¶ 14.) Lecszczynski further stated that she had never personally heard any recording of WPNA's afternoon news show in which Rudnicki's deposited reports appeared. (*Id.* ¶ 15.) Attached to Lecszczynski's affidavit are discs containing copies of the broadcast recordings that she reviewed, six reports she acknowledges Rudnicki deposited with the Copyright Office, and 14 clips of WPNA broadcasts provided by Plaintiff's attorneys. (*Id.*, Ex.'s A, B, and C.)

In response, Plaintiff submitted the affidavit of Anna Roclawska, a legal assistant employed by Plaintiff's counsel. Roclawska stated that she also reviewed the original DAT recordings maintained by the Defendants and identified more than 40 occasions between late July 2006 and mid-October 2006 when Rudnicki's reports aired on WPNA's afternoon news program. (Roclawska, Aff. ¶ 1-8, Ex. J to Pl's 56.1 Resp.) Roclawska says the reports were in Rudnicki's voice and reproduced verbatim, except for the deletion of Rudnicki's sign-off. (*Id.* at ¶ 13.) According to Roclawska, recordings of the six reports that Rudnicki deposited with the Copyright Office aired during WPNA's afternoon news program on August 17, 18, 25, 28, 29 and 30, 2006. (*Id.* at ¶ 12.)

In May 2007, Plaintiff moved *in limine* to bar any argument that Rudnicki's 2006 works were not properly registered with the United States Copyright Office under 17 U.S.C. § 411. Plaintiff's motion effectively sought a declaration that the reports were properly registered and therefore appropriate bases for claims for statutory damages and recovery of attorney's fees. (Docket Entry

5

76.)  In support of the motion, Plaintiff attached the certificate issued by the Copyright Office.  He did not, however, attach the deposited disc, nor did he otherwise specify precisely which of Rudnicki's reports were deposited with the Copyright Office.  (*Id.*)  In his motion, Plaintiff argued that the registration certificate acted as a blanket registration for all of Rudnicki's works composed in the 90 days prior to his application.  Judge Moran of this court rejected that contention and observed that

> at most, the only broadcasts that are registered and thus eligible for statutory damages and attorney's fees, are the six broadcasts that were submitted with the registration application.  But, because plaintiff has submitted no evidence as to the identity of those six broadcasts, we cannot grant his motion with respect to those broadcasts.

*Rudnicki v. WPNA 1490 AM*, 580 F.Supp.2d 690, 694 (N.D. Ill 2008).

Plaintiff now seeks summary judgment on the issue of whether the six broadcasts that were submitted to the Register of Copyrights have been properly registered.  This time, Plaintiff presents the disc containing recordings of the six broadcasts and Defendants' apparent agreement on the contents of the disc, as demonstrated by Defendants' Rule 56 statement and exhibits.  (Def. 56.1 ¶ 32; Ex. J, to Def's 56 Stat.; Ex. B to Ex. I to Def's 56 Stat.)  For their part, Defendants move for summary judgment on all claims and seek to strike certain affidavits relied on by Plaintiff in opposition.

For the reasons explained here, the court grants Plaintiff's motion for partial summary judgment, grants Defendants' motion to strike, and reserves ruling on Defendants' motion for summary judgment.

## **DISCUSSION**

### I.  **Defendants' Motion to Strike**

Before addressing the motions for summary judgment, the court turns to Defendants' motion to strike three affidavits relied on by Plaintiff.  The contested affidavits are that of Anna Roclawska, who reviewed the DAT recordings for Plaintiff's counsel, and those of Malgorzata Moszczenska and

Kimila Ceran, senior employees of RadioZET who describe the assignment of rights under Rudnicki's Cooperation Agreement with their network.

Defendants seek to exclude Roclawska's affidavit because she was never disclosed as a potential witness in accordance with FED.R.CIV.P. 26, and because Roclawska failed to attach copies of the WPNA radio broadcasts to her affidavit in accordance with FED.R.CIV.P. 56(e)(1). Plaintiff argues that Roclawska's statement is proper rebuttal testimony offered in response to the affidavit of Emily Lecszczynski and used to demonstrate the contents of the DAT recordings of the WPNA broadcasts.

The only complete and original recording of the relevant WPNA broadcasts—on which both Lecszczynski and Roclawska base their testimony—is in Defendants' possession. The original DAT recordings are being stored in a supply closet at a WPNA recording facility in Oak Park. (Kearns Dep. 5-6.) Both parties have had physical access to the DAT tapes, but the audio recordings have been effectively inaccessible since no later than June 2009 because the only available machine capable of playing the DAT recordings is broken. The recordings themselves are apparently intact and could be played if the machine were repaired or another machine were found. The motions and responses the court now considers were filed in August 2009, and it does not appear from the record that either party made an effort to repair the disabled machine or to obtain a replacement prior to filing.

Roclawska's affidavit sets forth the content of the DAT recordings she reviewed before the machine broke down. The need for disclosing Roclawska as a potential witness was understandably not anticipated by Plaintiff, as need for her affidavit presumably arose only after the unexpected inaccessibility of the original recordings. The court assumes the parties will ultimately find another method for presenting the original recordings should the case proceed to trial, obviating the need for Roclawska's testimony. In the meantime, Plaintiff's reliance on Roclawska's testimony is justified given the circumstances. The court's consideration of Roclawska's affidavit is also

harmless to Defendants, who have had unlimited access to the original recordings since the initiation of this lawsuit and who would still have unimpeded access had they maintained or repaired the machinery needed to play the recordings. Offering the recordings as an exhibit to Roclawska's affidavit, as Defendants would require, would serve no purpose in light of the parties' current inability to play them. Roclawska's personal knowledge of the DAT recordings she heard is sufficient to establish their contents for purposes of the motions now before the court. The motion to strike her affidavit is denied.

Defendants next object to the affidavits of Malgorzata Moszczenska and Kimila Ceran, both senior RadioZET employees. (Ceran Aff. ¶ 1-3, Ex. C. Pl.'s 56.1 Resp.; Moszczenska Aff. ¶ 1-3, Ex. B. Pl.'s 56.1 Resp.) Neither Moszczenska nor Ceran were disclosed to Defendants as potential witnesses during discovery. Their affidavits have been produced now by Plaintiff to rebut Defendants' contention that Rudnicki transferred his copyrights to RadioZET and therefore lacks standing to bring this lawsuit. Both Moszczenska and Ceran state that the assignment of rights in Rudnicki's work to RadioZET under the Cooperation Agreement was limited to the country of Poland and that RadioZET was aware of and acquiesced in Rudnicki's collaboration with WNVR in Chicago. (Ceran Aff. ¶ 4-6, Ex. C. Pl.'s 56.1 Resp.; Moszczenska Aff. ¶ 4-6, Ex. B. Pl.'s 56.1 Resp.)

Plaintiff asserts that he did not initially intend to call anyone from RadioZET to testify and could not have anticipated Defendants' standing argument. Since Plaintiff offers the Ceran and Moszczenska affidavits only to rebut Defendants' standing theory, Plaintiff contends, his failure to disclose Moszczenska or Ceran did not run afoul of FED. R. CIV. P. 26(a). Whatever the merits of that argument, the court finds Defendants were adequately "on notice" prior to the close of discovery that Moszczenska and Ceran potentially had information that was pertinent to this matter. *See Gutierrez v. AT&T Broadband, LLC*, 382 F.3d 725, 732 (7th Cir 2004). In an October 2006 deposition, Rudnicki identified Moszczenska as his superior at RadioZET and Ceran as the person

with whom he negotiated the terms of his Cooperation Agreement. (Rudnicki Dep. 10/16/06, 56:14-23, 37-38.) When Defendants elected to pursue their theory that Rudnicki contractually transferred his copyright to RadioZET, Defendants were well aware that Moszczenska and Ceran might have had knowledge of this matter. Although a party has a general duty to supplement its Rule 26(a) disclosures, it is not required to do so when information has "otherwise been made known to the other parties during the discovery process." FED.R.CIV.P.26(e)(1), (2); *see also David v. Caterpillar, Inc.*, 324 F.3d 851, 856 (7th Cir. 2003). That test is met here: for many months, Defendants have known the identity of Moszczenska and Ceran and what they are likely to know about Rudnicki's relationship with RadioZET. Accordingly, the court declines to strike the affidavits of Moszczenska or Ceran on this basis.

In the alternative, Defendants seek to exclude certain paragraphs of the Moszczenska and Ceran affidavits because they are not based on personal knowledge, are conclusory, or constitute hearsay.[3] Two paragraphs, which are identical in both affidavits, specifically purport to characterize the legal meaning of the Cooperation Agreement and RadioZET's knowledge with regard to that agreement. The parties agree that the Cooperation Agreement itself does not include any explicit limitation of its application to the territory of Poland. The affiants assert, however, that (1) "[a]t all relevant times, Rafal Rudnicki's contract with RadioZET was limited to the country of Poland," and (2) "RadioZET was always aware and had knowledge that Rafal Rudnicki had the right to his works, including works provided to RadioZET, in any country or location outside Poland." (Ceran Aff. ¶ 4-5, Ex. C. Pl.'s 56.1 Resp.; Moszczenska Aff. ¶ 4-5, Ex. B. Pl.'s 56.1 Resp.)

---

[3]     Defendants also seek to strike the paragraphs because the affidavits fail to attach a sworn copy of the agreement. This objection has no merit. Sworn copies of the Agreement, drafted in Polish, are in the record. (Ex. G to Pl.'s 56.1 Resp.; Ex. B1 to Def.'s 56 Stat.) The parties' dueling interpretations of the agreement derive, in part, from their contradictory English translations. Presumably, Moszczenska and Ceran speak Polish and their understanding of the agreement is derived from the Polish version, which is not in dispute and which is already part of the record.

Though Moszczenska and Ceran are senior employees of RadioZET, neither one was a signatory to the Cooperation Agreement and neither one sets out any facts in her affidavit that supports her interpretation of the contract. Neither affidavit describes what role, if any, either affiant played in drafting or negotiating the contract. Instead, both attest to "administering" the contract, which the court supposes to mean only that the affiants oversaw Rudnicki's performance of his obligations. (Ceran Aff. ¶ 3, Ex. C. Pl.'s 56.1 Resp.; Moszczenska Aff. ¶ 3, Ex. B. Pl.'s 56.1 Resp.)

"A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show the affiant is competent to testify on the matters stated." FED. R. CIV. P. 56(e). Although personal knowledge may include reasonable inferences, those inferences must be "grounded in observations or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience." *Visser v. Packer Eng'g Assoc.*, 924 F.2d 655, 659 (7th Cir. 1991)(en banc). If Moszczenska and Ceran have any personal knowledge or experience that permits them to interpret the contract or that supports an inference as to how RadioZET understands its contractual entitlements, they have failed to sufficiently attest to that knowledge in their affidavits. Accordingly, the court grants Defendants' motion in part. Paragraphs four and five of both the Moszczenska and Ceran affidavits will be stricken from the record.

Paragraph six, which is also identical in both affidavits, is another matter, however. That paragraph describes RadioZET's awareness of Rudnicki's association with a United States broadcasting entity (WNVR). As Rudnicki's supervisors, Moszczenska and Ceran would have personal knowledge of what information was available to RadioZET and how RadioZET administered and enforced its Cooperation Agreement with Rudnicki. Defendants' objection to paragraph six is overruled.

Defendants' motion to strike is granted with respect to paragraphs four and five of the affidavits from Moszczenska and Ceran and otherwise denied.

10

## II.    Summary Judgment Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). In determining whether a genuine issue of material fact exists, a court must consider the evidence in the light most favorable to the nonmoving party. *Lee v. Young*, 533 F.3d 505, 509 (7th Cir. 2008); *Adickes v. S.H Kress & Co.*, 398 U.S. 144, 157 (1970). At the same time, a party opposing summary judgment must present evidence from which the jury could reasonably find for the non-moving party. *Rozskowiak v. Village of Arlington Hts.*, 415 F.3d 608, 612 (7th Cir. 2005)(and cases cited therein). When considering dueling motions for summary judgment, the court requires each movant to satisfy FED. R. Civ. P. 56's requirements to prevail on its motion. *Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002).

## III.    Choice of Law

This case involves journalistic works by a Polish national that were created in Belgium, broadcast in Poland, and allegedly infringed in the United States. The Berne Convention, 1986 U.S.T. 160, to which the United States, Poland, and Belgium are all signatories, applies to international copyright protections. Under the Convention, the law of the signatory country with the closest relationship to the international work at issue governs determination of copyright ownership. *Itar-Tass Russian News Agency v. Russian Kurier, Inc.*, 153 F.3d 82, 90-91 (2nd Cir. 1998). In this case, the parties agree that Poland is the country with the closest relationship to the news reports; though he resides in Belgium, the author is a Polish national, and the works were first broadcast and intended for public consumption in Poland. The relevant law governing ownership rights, therefore, is Poland's *Law on Copyright and Related Rights of February 4, 1994* (hereafter referred to as "Poland's Copyright Law"). The definitive English translation of Poland's Copyright Law, and

11

the one on which the court relies for purposes of this decision, is found on the website of the United

Nations Educational, Scientific, and Cultural Organization (UNESCO).[4]  For infringement issues,

such as the scope of protection or recovery, the relevant law is that of the country where the alleged

infringement occurred.  *Itar-Tass Russian News Agency,* 153 F.3d at 91-92.  Thus, in this case, the

United States Copyright Act governs infringement issues.

## IV.    Ownership of News Under Polish Law

Defendants first argue for the dismissal of all claims because, they contend, Poland's

Copyright Law does not protect Rudnicki's news reports.  There is no factual dispute that the

reports in question include information that was of public interest and import in Poland.  On this

basis, Defendants contend, Article 4 of Poland's Copyright Law precludes Rudnicki's claimed

ownership interest.  Article 4 reads: "The copyright shall not cover . . . simple press information."

In the court's view, Defendants read the provision too broadly.  The exemption of "simple

press information" is not a blanket exemption that precludes any copyright protection for news

reports.  Rather, the court reads this provision as consistent with similar provisions in both the

United States Copyright Act, 17 U.S.C. §102(b),[5] and the Berne Convention, Art. 2(8).[6]  These

provisions are commonly interpreted to exclude raw facts from copyright protection while preserving

---

[4]     The parties have presented the court with inconsistent English translations of the relevant Polish law.  Under the circumstances, the court believes the UNESCO translation is the most reliable version available.  The court therefore disregards the parties' versions.  The full UNESCO translation is available at: http://portal.unesco.org/culture/en/files/30304/11420011803pl_copyright_2005_en.pdf/pl_copyright_2005_en.pdf (last visited on Dec. 9, 2009).

[5]     17 U.S.C. §102(b) provides that, "[i]n no case does copyright protection . . . extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery . . ." News, in the abstract, meaning the raw information that makes up the news, has been held to be encompassed by this provision.  *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 557 (1985).

[6]     Art. 2(8) of the Berne Convention excludes "news of the day" and "miscellaneous facts having the character of mere items of press information."

protections for the manner in which the facts are presented. As one commentator has observed: "Under both American copyright law and international copyright agreements, the 'news of the day' belongs to the public. Once that 'news' is communicated, however, American law provides that copyright subsists in the expression that embodies the news." Eric Easton, *Who Owns 'the First Draft of History?': Reconsidering Copyright in News*, 27 COLUM. J. L. & ARTS 521, 524 (2004).

In short, copyright protection does not extend to raw facts themselves, but does extend to certain expressions and arrangements of facts. *Cf. Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 347-48 (holding that, while facts are part of the public domain, only a "minimal degree of creativity" in selection and arrangement is necessary for copyright protection). Defendants have not explained why this court should interpret Poland's Copyright Law to substantially deviate from this generally-recognized principle. Whether Rudnicki's work is sufficiently original and creative to warrant protection under the laws of Poland and the United States is disputed.

Defendant's contention that Article 4 of Poland's Copyright Law contains a blanket exclusion of all news-related material is further belied by Article 25 of the law, which specifically addresses the rights of the press. Article 25 reads, in part: "It shall be permitted, for informative purposes, to disseminate through the press, radio and television the materials . . . which have been already disseminated . . . [including] (a) reports on current events, [and] (b) updates on political, economic or religious issues, unless further dissemination thereof has been expressly prohibited . . . " While the language outlining reproduction of press reports is permissive, Article 25 goes on to identify several instances in which authors of press reports "shall have the right to obtain remuneration for the use of their works . . . ." Notably, the provision specifically recognizes that authors of political, economic, and religious updates are entitled to remuneration. The Polish Copyright Law does not define what constitutes an "update on political, economic, or religious issues," but as the court reads this term, it could include a journalistic work that addresses social concerns and contains a modicum of creativity or analysis. Taken as a whole, Article 25 demonstrates that the drafters of

the Polish law intended to protect both the free flow of information and the right of members of the press to be compensated in exchange for their creative efforts.

Though the vast majority of the allegedly infringed reports are not in the record, the six items of Rudnicki's work currently before the court, which include elements of analysis and reporting on political events, appear to fall within Article 25's "updates on political issues" language. As such, Poland's Copyright Law appears to vest Rudnicki or his assignees with the right to obtain remuneration for the use of his journalistic work.[7] At a minimum, there are disputes of fact precluding summary judgment in favor of Defendants on this basis.

## V.     Rudnicki's Standing to Bring Suit

Defendants next argue that Rudnicki lacks standing to bring this lawsuit because he has contractually transferred his rights in his reports to RadioZET. Under 17 U.S.C. § 501(b), only "[t]he legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." This requirement applies even when the work at issue was produced abroad and ownership is to be determined by foreign law. *Itar-Tass Russian News Agency*, 153 F.3d at 91. Accordingly, Rudnicki's standing to bring an action for infringement under American law depends on whether he currently possesses an exclusive right under copyright.

The distribution of rights between Rudnicki and RadioZET is defined by § 5 of Rudnicki's employment contract, called the Cooperation Agreement. That provision reads:

> Each and every time the Correspondence medium (carrier) is delivered or the Correspondence is broadcast live by RadioZET, RadioZET acquires the author's

---

[7]     Further, Article 34 of Poland's Copyright Law requires proper attribution and identification of author and source in order for a work's reproduction to fall within a permitted use. According to Rudnicki and Roclawska, WPNA deleted Rudnicki's name from the broadcast reports. That fact would defeat any argument that Defendants' use was permissible under Polish law.

economic rights[8] to such Correspondence, including the unlimited, in time and space, right to manage and exploit the Correspondence in the following areas of exploitation: (i) recording and multiplying, in particular on magnetic tapes, CDs, and computer disks, (ii) entering into computer memory, (iii) selling; (iv) reproducing in public, replaying, broadcasting, or re-transmitting; (v) dissemination in the form of a digital recording on the internet.  As of the moment of copyright transfer, RadioZET also acquires the ownership right to media (carriers) the Correspondence has been recorded on.

(Cooperation Agreement [English], Ex. H. to Pl's 56.1 Resp.)  Defendants claim this provision transfers all of Rudnicki's cognizable rights in the reports to RadioZET, thus depriving Rudnicki of the ability to maintain this lawsuit.  Plaintiff counters that the agreement is, in fact, a grant of a limited license to RadioZET with an implicit territorial limitation.  Plaintiff contends the contract transfers Rudnicki's economic rights to RadioZET only for uses within the territory of Poland, leaving to Rudnicki full rights to his work everywhere else in the world.  Rudnicki points to RadioZET's awareness of his work with Chicago-area station WNVR to corroborate this interpretation.

The contractual provision contains no explicit limitation to Polish territory, but Plaintiff urges the court to read such a limitation into the agreement as implicit under Polish law.  In support, Plaintiff directs the court to Article 66 of Poland's Copyright Law, which reads: "Unless provided otherwise therein, a license contract shall authorize the use of the work for five years within the territory of the state in which the licensee has its seat."  Defendants respond that this provision is inapplicable because the agreement does explicitly "provide otherwise."  Specifically, the Cooperation Agreement unambiguously provides that RadioZET's rights are "unlimited, in time and space," effectively indicating that the contract is intended to apply forever and everywhere.

---

[8]     The original agreement was drafted exclusively in Polish.  The Defendants' translation would translate this term as "copyrights."  After reviewing Poland's copyright law, however, the court has determined that Polish law distinguishes between "moral" and "economic" rights, a distinction that supports Plaintiff's translation.  For the purpose of considering Defendants' motion for summary judgment, the court adopts Plaintiff's proffered translation of the contract.

The court agrees. In interpreting written contracts, a court initially determines, as a matter of law, whether the contract is ambiguous or unambiguous.[9] *See Grun v. Pneumo Abex Corp.*, 163 F.3d 411, 420 (7th Cir. 1998) *citing Ryan v. Chromalloy American Corp.,* 877 F.2d 598, 602 (7th Cir. 1989). If the contract is unambiguous, the court is to construe it as a matter of law. *U.S. Fire Ins. Co. v. Pressed Steel Tank Co.*, 852 F.2d 313, 316 (7th Cir. 1988). Construction of an unambiguous contract is therefore a question of law, for which summary judgment is particularly appropriate. *Grun*, 163 F.3d at 419. The phrase "unlimited in time and space" as used in the Cooperation Agreement is unambiguous. In plain terms, it means the transfer of rights described applies at all times and in all places. As the court reads the contract, the "unlimited in time and space" language does not modify the general term "economic rights," but describes instead a subset of economic, management, and exploitation rights that are specifically enumerated in § 5. These are the rights to control the work for purposes of (i) recording and multiplying, in particular on magnetic tapes, CDs, and computer disks; (ii) entering into computer memory; (iii) selling; (iv) reproducing in public, replaying, broadcasting, or re-transmitting; and (v) dissemination in the form of a digital recording on the internet. The agreement transfers total ownership rights in these five enumerated areas to RadioZET. The enumerated rights encompass substantially the rights that are typically protected under American copyright law. *See* 17 U.S.C. § 106 (granting the copyright owner exclusive rights to (1) reproduce the work, (2) prepare derivative works, (3) sell the work, (4) perform the work, (5) display the work, and (6) perform the work by digital audio transmission). Assuming the English translation adequately captures the language of the original Polish draft, the contract transfers a substantial portion of Rudnicki's copyright to RadioZET.

The challenge for an American court in discerning the distribution of rights under the language of the Cooperation Agreement is that, unlike copyright law in the United States, Polish

---

[9] The parties have not suggested that Polish law rules of contract construction are inconsistent with these standards.

law distinguishes between "moral" rights and "economic" rights in the same copyright.[10] Article 16 of Poland's Copyright Law recognizes "moral rights" that "protect the link between the author and his work." Under Article 16, moral rights are unlimited in time and cannot be waived or transferred by contract. They include the rights "to have the contents and form of the author's work inviolable and properly used" and the right "to control the manner of using the work."

Moral rights are distinct from economic rights, which are governed by Article 41 of Poland's Copyright Law. That article makes clear that "economic rights" in a copyright are transferable and that the holder of economic rights in copyrighted work is entitled to remuneration for its use. As this court understands Polish law, the holder of moral rights is entitled to equitable relief, such as an injunction preventing certain uses of a work, and the holder of economic rights is entitled to monetary recovery for the value of infringed work. (*Compare* Article 78 *with* Article 79.) In this case, while Rudnicki retains nontransferable moral rights to his work under Polish law, he does not have an "exclusive right" under a copyright that is cognizable under 17 U.S.C. § 501(b). Rudnicki has relinquished substantial elements of the copyright, such as the right to receive remuneration for the use of his work, to RadioZET. And because the Agreement specifically provides that this transfer of rights is unlimited in time and space, Polish law does not provide Rudnicki with an implicit term permitting him to exercise economic rights in his copyright outside Poland.

Plaintiff challenges this conclusion, urging that RadioZET's performance under the contract demonstrates that RadioZET initially understood the agreement not to apply beyond the territory of Poland. Alternatively, Plaintiff argues, RadioZET effectively waived its contractual entitlement to enforce Rudnicki's economic rights outside of Poland. Rudnicki's testimony and the non-

---

[10]        In American law, "[c]reators of certain artistic works are entitled (along the lines of the European approach to moral rights) to control how their work is presented or altered by others," but this entitlement is considered distinct from traditional copyright protections. *Bretford Mfg., Inc. v. Smith System Mfg. Corp.*, 419 F.3d 576, 581 (7th Cir. 2005)(holding that a manufacturer's table was not a work of visual art and, therefore, the manufacturer was not entitled to dictate buyer's use of the product).

excluded statements of Malgorzata Moszczenska and Kimila Ceran do reflect that RadioZET acknowledged Rudnicki's ability to work with WNVR in the United States.    This apparent accommodation by RadioZET is not sufficient by itself, however, to demonstrate a transfer of ceded economic rights back to Rudnicki under either Polish or American law.  *See* Poland's Copyright Law, Art. 53 ("A contract for the transfer of author's economic rights shall be made in writing under the pain of nullity."); 17 U.S.C. §204(a)("A transfer of copyright ownership . . . is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed . . .").    Under the plain terms of the Cooperation Agreement, RadioZET became the legal owner of Rudnicki's economic rights in his reports as soon as he transferred the reports to RadioZET's possession.  "Each and every time the Correspondence medium (carrier) is delivered or the Correspondence is broadcast live by RadioZET, RadioZET acquires the author's economic rights."  (Cooperation Agreement [English], Ex. H. to Pl's 56.1 Resp.)  Rudnicki presents no evidence to establish that RadioZET understood the contract to mean anything other than what is indicated by that plain language.  Nor does Rudnicki present sufficient evidence, even when viewed in the light most favorable to Plaintiff, that RadioZET transferred its ownership interest back to Rudnicki when it permitted him to work simultaneously for WNVR.

The court therefore grants Defendants' motion for summary judgment on the issue of standing without prejudice.  Rudnicki will have leave within 30 days from the issuance of this opinion to seek an assignment of the economic rights in his works from RadioZET.  Should Rudnicki obtain the assignment, the court will entertain further argument on his standing to enforce a copyright on reports "delivered" to or "broadcast live" by RadioZET prior to the alleged infringement.[11]

---

[11]    Assuming Rudnicki is able to obtain an assignment, such an effort still might serve only to postpone the ultimate dismissal of his claims.  Civil actions under the Copyright Act are time-barred if they are not brought within three years of the alleged act of infringement. 17 U.S.C.A. §
(continued...)

Because the court's resolution of certain other issues may be helpful in determining how the parties will proceed, the court addresses the remainder of the parties' arguments briefly below.

## VI.    Entitlement to Damages

Under 17 U.S.C. § 504, an infringer may be liable for either "the copyright owner's actual damages and any additional profits of the infringer" or statutory damages.   Defendants seek summary judgment on the ground that, assuming he has standing to proceed here, Plaintiff has failed to demonstrate that he is entitled to either actual or statutory damages.

In his deposition, Rudnicki admitted that he incurred no economic losses as a result of Defendants' infringement.   (Rudnicki Dep. 10/16/06 161:3-163:8.)   Defendants suggest that Rudnicki's admission forecloses the possibility of any recovery of actual damages.   Recovery of actual damages may, however, be based on the value of the infringing use to the infringer so long as the amount is not based on "undue speculation." *McRoberts Software, Inc. v. Media 100, Inc.*, 329 F.3d 557 (7th Cir. 2003).   The value of the infringing use to the infringer can be determined in part through a "determination of what a willing buyer would have been reasonably required to pay to a willing seller for plaintiff['s] work." *Deltak, Inc. v. Advanced Systems, Inc.*, 767 F.2d 357, 362 (7th Cir. 1985)(quoting *Sid & Marty Krofft Televison Productions v. McDonald's Corp.*, 562 F.2d 1157, 1174 (9th Cir. 1977)).

---

[11](...continued)
507(b).   "Because each act of infringement is a distinct harm, the statute of limitations bars infringement claims that accrued more than three years before suit was filed but does not preclude infringement claims that accrued with the statutory period." *Bridgeport Music, Inc. v. Diamond Time, Ltd.*, 371 F.3d 883, 899 (6th Cir. 2004).   As far as the court is aware, the last alleged act of infringement in this case occurred in August 2006.   Were RadioZET to bring its own infringement action today, its claims would be likely be time-barred.   Assuming Rudnicki obtains an assignment, it is unclear whether the claims brought on RadioZET's behalf would relate back to Rudnicki's complaint or whether his action would otherwise act to toll the statute of limitations.   In the event a deeper consideration of this issue becomes necessary, the court invites the parties to file briefs addressing the matter.

In this case, a non-speculative value of Rudnicki's reports is discernable, based on the price paid by willing buyers. Rudnicki was paid 120 Polish zlotych per piece of correspondence by RadioZET. At the 2006 exchange rate (1 USD to 3.1 zlotych),[12] that amounts to roughly $38.71 per report. Also, WNVR paid Rudnicki $20 for each report that he filed for that station. (Pl.'s 56.1 Resp. at ¶ 20.) These numbers indicate that the market value of Rudnicki's correspondence was roughly $20 to $38 per report. Assuming WPNA infringed in every instance alleged in Rudnicki's 2004 and 2006 complaints (53 incidents in total), WPNA would have committed an infringing use with a market value inside the range of roughly $1,060 to $2,014. Whatever the wisdom of pursuing a federal lawsuit for such a sum, the amount of recoverable actual damages under this calculation is not unduly speculative. Assuming Plaintiff obtained an assignment and proved infringement, he could recover a non-speculative amount of actual damages.

As a plaintiff may recover either actual *or* statutory damages under the Copyright Act, it is unnecessary for the court to consider Defendants' arguments as to why Rudnicki is not entitled to statutory damages. Defendants are not entitled to summary judgment on this basis.

**VII.    Registration With the Copyright Office**

Finally, Plaintiff moves for partial summary judgment on the issue of whether the six works that Rudnicki deposited with the United States Copyright Office were properly registered under the Copyright Act. Plaintiff emphatically argues that he seeks "only a limited ruling" that the works were registered and "does not seek a determination that [Rudnicki] is entitled to statutory damages" or attorneys' fees for infringement of the six works. (Pl's Reply at 1.) In light of the limited nature of Plaintiff's motion, the court will not address whether Plaintiff is entitled to statutory damages or

---

[12]    Currency exchange rates can be found in The CIA World Factbook, which is available online at: https://www.cia.gov/library/publications/the-world-factbook/ last visited December 9, 2009.

attorney's fees under 17 U.S.C. § 504 except to observe that Plaintiff has not yet established to the court's satisfaction that any such entitlement exists.[13]

Responding to Plaintiff's previous motion *in limine* on this issue, Judge Moran observed that all that 17 U.S.C. § 408(b)(3) requires for the valid registration of works published outside the United States is the deposit of "one complete copy or phonorecord" of the works and payment of a registration fee. *Rudnicki*, 580 F.Supp.2d at 692. On that basis, Judge Moran rejected Plaintiff's argument that Rudnicki somehow broadly registered all of his works by sending a sample of six reports to the Copyright Office. The court reserved judgment, however, on the six deposited works because Plaintiff had failed to identify precisely which reports had been properly deposited. *Id.* at 694.

Plaintiff now submits to the court a copy of the disc and transcripts of the six works that Rudnicki deposited with the Copyright Office. The filings of both parties acknowledge the contents of the disc.[14] As there is no material dispute that the six listed works were submitted to the United States Copyright Office and a certificate of registration was subsequently issued to Plaintiff by the

---

[13]     In five of the six reports deposited with the Copyright Office, Rudnicki signs off by indicating that he is an agent of RadioZET. (Ex. 4, Pl's 56.1 Stat.) Assuming these reports were delivered to RadioZET as they appear to have been, RadioZET owns the economic rights to them under the terms of its contract with Rudnicki. Claims for these five items will be dismissed should Plaintiff fail to obtain a valid assignment of RadioZET's rights. It is unclear from the record whether RadioZET also owns economic rights to the sixth report on the disc, which was apparently aired on WNVR. In addition, questions of fact remain as to when these works were first published and whether the works were registered within a period that would permit Rudnicki to recover statutory damages. Under the Copyright Act, no award for statutory damages or attorneys fees may be made for "any infringement of copyright commenced after first publication of the work and before the effective date of the registration, unless such registration is made within three months after the first publication of the work." 17 U.S.C. § 412.

[14]     As described earlier, the deposited reports are (1) a story outlining the Polish Prime Minister's visit to Brussels, (2) a story on the commitment of European troops to Lebanon, (3) a story on state-aid to Polish shipyards, (4) a story on meetings between the European Commission President and the Polish Prime Minister, (5) A story on the Polish Prime Minster's schedule while in Brussels, and (6) a story on security at European airports. (Ex. J, to Def's 56 Stat.; Ex. B to Ex. I to Def's 56 Stat.; Pl's 56.1 Stat. ¶ 10).

Copyright Office, the court finds the six works were properly registered pursuant to the United States Copyright Act.  It is immaterial that the alleged infringement in this case occurred prior to effective registration or the works.  That issue is relevant to Rudnicki's claim for statutory damages for infringement, not to the question of whether he properly registered the works.

Accordingly, Plaintiff's motion for partial summary judgment is granted.  The court finds Rudnicki registered the six works with the United States Copyright Office.  The court makes no finding as to whether Rudnicki may recover statutory damages or attorneys' fees for infringement of these works.

<u>**CONCLUSION**</u>

For the reasons stated, Defendants' motion to strike [168] is granted in part and denied in part.  Paragraphs four and five of the affidavits of Malgorzata Moszczenska and Kimila Ceran are stricken.  The court grants Defendant's motion for summary judgment [140] without prejudice to reconsideration, should Plaintiff succeed in obtaining an assignment of rights from RadioZET.  Should he fail to do so, Defendants will be entitled to summary judgment on all claims relating to reports owned by RadioZET.  Plaintiff's motion for partial summary judgment on the issue of registration is granted [143].  The court finds six items of Rudnicki's work were properly registered with the United States Copyright Office, but renders no judgment as to the availability of statutory damages or attorneys' fees under the United States Copyright Act.

ENTER:

Dated:  December 10, 2009

_____
REBECCA R. PALLMEYER
United States District Judge

22